GEORGE E. WILLEY, GEORGE OBERDORFER, A. ROWDEN GEORGE AND LOUIS H. MCKEE, INDIVIDUALLY AND AS TRUSTEES UNDER TRUST AGREEMENT OF PONCE DE LEON BEACH ASSOCIATES, *Appellants*, v. W. J. HOGGSON CORPORATION, FRED L. HALL, GOOLD T. BUTLER, FOUNTAIN OF YOUTH HOTEL COMPANY, W. J. HOGGSON, CLARK T. CHAMBERS, W. TYLER BROWNE, E. L. BARNETT, INC., A CORPORATION, AND ST. AUGUSTINE BEACH & TOLL BRIDGE COMPANY, A CORPORATION, *Appellees*.

## En Banc.

## Opinion Filed October 17, 1925.

1. An agreement between two or more persons joint owners, or owners in common, of real and personal properties, or of either character of property, by which one or more of such persons are designated as so-called "Trustees" for themselves and their associates to manage, sell, dispose of, re-invest and otherwise trade in, or with, such fund, which consists of such common properties, constitutes a partnership or joint stock company .in which the members who possess contractual capacity are severally liable, and all are necessary parties to any litigation growing out of such agreement and affecting such properties.

2. No person can be both trustee and *cestui que trust* of property at the same time.

3. The phrase "Common Law Trust," so far as the same may be created in this State by agreement, has reference to the method of its creation rather than to the powers, duties and liabilities of the so-called trustees and *cestuis que trustent*.

4. Where parties having a joint interest in the subject matter of litigation are not properly before the court on appeal, the appeal will be dismissed.

Motion to dismiss appeal granted.

*David R. Dunham, P. L. Gaskins, E. J. L'Engle, J. W. Shands* and *O. O. McCollum,* for Appellants;

*Kay, Adams & Ragland,* for Appellees.

ELLIS, J.—The appellants exhibited their amended bill in the Circuit Court for St. Johns County against the above named defendants. They and Chesleigh H. Briscoe demurred to the bill. The St. Augustine Beach & Toll Bridge Company being named in the demurrer as "St. Augustine *North* Beach & Toll Bridge Company." Chesleigh H. Briscoe was not named as a defendant either in the original or amended bill.

On July 3, 1924, the Chancellor sustained the demurrer to the amended bill.

On July 16, 1924, the complainants filed their notice of entry of appeal which was recorded the same day in the "minutes of said court in Chancery Order Book." Chesleigh H. Briscoe was named as one of the parties defendant.

On July 21, 1924, the defendants moved to dismiss the bill and discharge the *lis pendens* which had been filed.

On July 19, 1924, the Chancellor granted the motion. It thus appears from the record that the order dismissing the bill was made two days before the motion was made and five days after the entry of notice of appeal and record of same. It is not contended by either party, however, that there was any irregularity in fact in the order.

On November 26, 1924, George Oberdorfer submitted his petition that the appeal be dismissed as to him individually, or as trustee. The grounds set forth in the petition were in substance that he had been induced, through fraudulent representations of Willey and A. Rowden George, to become a trustee of the Ponce de Leon Beach Associates, and he desired a dismissal of the cause so far as he was concerned

as appellant in order that the wrong, if any, committed through him upon the appellees might be remedied.

Notice was given to the parties through their counsel of the filing of such petition.

On December 2, 1924, appellees moved to quash the appeal upon several grounds, the substance of which was that the appeal was taken for delay; that it was not taken in good faith; that the appeal was an abuse of the court's process, and was taken by George F. Willey and A. Rowden George for the purpose of forcing concessions from W. J. Hoggson and St. Augustine North Beach & Toll Bridge Company by hindering the construction of a bridge across North River in the City of St. Augustine.

No action has been taken by this Court upon that motion because a proper consideration of it necessitated a determination of the cause upon its merits in advance of the determination of other causes pending in this Court which in the order of their submission were entitled to prior consideration.

On December 5, 1924, Louis H. McKee, one of the appellants, withdrew from the appeal and requested its dismissal as to himself individually and as trustee.

On January 26, 1925, a motion by appellees was made in this Court to dismiss the appeal "for present want of indispensable parties appellant." The motion contained a statement in explanation of the ground which averred that Louis H. McKee did not join in the appeal, and since he had learned his name was used as one of the appellants he had in his own proper person moved to dismiss the appeal as to himself individually or as trustee; and that there was a petition before the Court in behalf of George Oberdorfer asking for a dismissal of the appeal as to himself individually and as trustee.

On February 11, 1925, the appellees moved to dismiss the

appeal upon the ground that subsequently to the entry of the appeal from the order sustaining the demurrer to the amended bill of complaint the Chancellor made an order dismissing the bill; that no appeal had been taken from such final decree and the time for doing so had expired. Also that as Louis H. McKee was an indispensable party complainant, and did not join in the appeal the order sustaining the demurrer to the bill and the final decree dismissing the same had become final and absolute as to him, and the time had expired in which the entry of appeal could be amended, and an order of severance as to McKee procured.

This motion was considered by the Court and disposed of adversely to movants upon that phase of it which presented the proposition that in the absence of a supersedeas the lower court had power to order a dismissal of the cause after an appeal to this court, and thus deprive this Court of jurisdiction to hear and determine the questions presented by the appeal. See George F. Willey, *et al.*, v. W. J. Hoggson Corporation, *et als.*, decided January Term, A. D. 1925.

Upon request of counsel for appellees, however, the court heard oral arguments in July upon the motion filed January 26, 1925, to dismiss the appeal upon the ground of "present want of indispensable parties appellant."

A proper consideration of this motion requires a statement of the subject matter of the litigation, the causes which gave rise to it, and the interests of the parties in relation to it.

We will make the statement as concise as we can in view of the voluminous record and many motions and briefs which have been filed in the cause.

In 1919 a corporation, known as the Ponce de Leon Fountain of Youth Company—Fred L. Hall, owner of 997 shares

of its capital stock, which was approximately its entire issue —was the owner of certain lands near St. Augustine upon which was located a spring with which, according to local legend, the name of Ponce de Leon was associated in 1513.

Hall and W. J. Hoggson conceived the plan of acquiring such lands and others adjacent thereto, build a toll bridge across North River to the mainland, and otherwise develop the property.

The Fountain of Youth Hotel Company, a Delaware Corporation, was organized in furtherance of such plan. Its stock was issued to Fred L. Hall, E. L. Barnett, Inc.; W. J. Hoggson and Chesleigh H. Briscoe, Hall receiving 1,500 shares in consideration of his stock in the Ponce de Leon Company; E. L. Barnett, Inc., 500 shares in consideration of the cancellation of claims which it had against the Company, and W. J. Hoggson and Chesleigh H. Briscoe each 1,000 shares.

W. J. Hoggson Corporation is a New York Corporation; so is the E. L. Barnett, Inc. W. J. Hoggson is president and a director of both and the owner of a majority of the stock in each.

In 1922 the Hotel Company had acquired the lands and franchises desired, and the 997 shares of stock of the Ponce de Leon Company. The Hotel Company then entered into an agreement with the W. J. Hoggson Corporation for the construction, by the latter for the former, of bridges and roadways, and other improvements. The price agreed upon was one hundred and seventy-five thousand dollars.

W. Tyler Browne is an employee of W. J. Hoggson and the Corporation of that name; Chesleigh H. Briscoe is vice-president of the Corporation, and Goold T. Butler, an employee, also vice-president of the Hotel Company. So it is alleged.

In order to provide funds with which to pay for the construction work, and primarily for the purpose of securing the payment of moneys that would become due to the W. J. Hoggson Corporation for the construction work, the Hotel Company executed a deed of trust to the People's Bank for Savings of St. Augustine to secure the payment of $300,000 of eight per cent "Seven Year Cumulative Real Estate Participation Certificates." The instrument was dated May 1, 1922, and constituted a lien upon all the properties of the Hotel Company, including 997 shares of stock in the Ponce de Leon Company. The certificates were to be executed by the Company and issued by the Trustee according to the terms set out in the instrument.

It was provided that Fred L. Hall should receive $7,000 in cash and $8,000 in certificates in satisfaction of all "outstanding mortgages, liens and claims against the property"; E. L. Barnett, Inc., should receive $35,000 in certificates in satisfaction of its claims against the property; W. J. Hoggson Corporation should receive $25,000 as a final payment on its contract; Goold T. Butler $2,000 in certificates for his fees as engineer.

An amount up to $190,000 was to be issued by the Trustee upon the payment to it of 85 per cent of the face value of the certificates.

The remaining $40,000 was to be issued only in the event of unforeseen contingencies growing out of the construction work. The trust deed was to be a first lien upon the properties described.

Provision was made for the release by the Trustee of the Ponce de Leon stock and certain plots of land upon conditions named. Provision was also made for the payment of taxes and other liens and the creation of a sinking fund to retire the certificates. Provision was made for declaring the entire indebtedness to be due in the event of the Com-

pany's failure to pay interest, and the selection of a successor trustee in the event of the resignation or removal of the Bank from that position.

The Bank resigned in December, 1922, and the United States Trust Company of Jacksonville was selected as successor, but declined to serve. No other trustee was appointed.

The Hoggson Company entered upon the execution of its construction under the contract, and earned $85,352 upon which the Hotel Company paid $28,033, leaving a balance due of about $57,319. It had declared liens upon the property under the statute to the amount of $49,194 of the total amount due.

Such was the situation when, in May, 1923, the W. J. Hoggson Company exhibited its bill in the Circuit Court for St. Johns County against the Fountain of Youth Hotel Company, Clark T. Chambers, W. Tyler Browne, Fred L. Hall, and W. J. Hoggson, to declare an equitable lien in complainant's favor pursuant to the provisions of the trust deed. The bill was, in reality, one to foreclose the lien created by the trust deed. The bill alleged that of the participation certificates those numbered from 1 to 7 inclusive, number 10 and from 13 to 17 inclusive, aggregating $44,550, were owned by W. J. Hoggson; that Clark T. Chambers owned certificates numbered 8 and 9 aggregating the sum of $22,000. That Fred H. Hall held certificate numbered 11 in the sum of $8,000, and W. Tyler Browne held certificate numbered 12, in the sum of $400.

In July, 1923, Clark T. Chambers, W. Tyler Browne and W. J. Hoggson filed their cross bill against the Hoggson Corporation, the Hotel Company and Fred L. Hall.

The cross bill contained allegations to the effect that Fred L. Hall had become antagonistic to the plan which had been adopted for the taking over and development of the prop-

erties of the Ponce de Leon Fountain of Youth Company by
the Hotel Company, and by its activities as president and
director of that Company, in connection with George F.
Willey, who also claimed to be a director of the Company,
and others, had prevented the selection of a trustee for the
holders of the certificates issued by the Hotel Company;
had made no effort in behalf of that Company to redeem its
promises and obligations set forth in the trust deed, and
were endeavoring to depreciate the value of the Hotel Com-
pany's properties and the certificates issued for which the
trust deed was executed as security. This was done, so it
was alleged, in the interest of a rival association formed by
them for the purpose of ultimately acquiring the properties
and improvements of the Hotel Company, and controlling
the certificates issued by it. That Hall had disposed of
participation certificate numbered 11 to persons unknown,
and that in furtherance of his scheme to impair the value
of the Hotel Company's properties and the securities issued
by it in the form of participation certificates under the trust
deed he and Willey, with others, conveyed to George W.
Bassett, Jr., John Tilden, Allen J. Arnold, Horace J. Cor-
nell and J. D. Bush certain money and options upon real
estate and 1423 shares of the capital stock of the Hotel
Company evidenced by certificate number 11 of that com-
pany. These properties were to be held as common law real
estate trust under the name of "The Fountain of Youth
Company of St. Augustine" and they were authorized to
carry on the same kind of business for which the Hotel
Company was organized, and of which he was president
and director.

It was urged that in view of the hostile attitude of Hall
and his associates, and the practical insolvency of the Hotel
Company, the complainant's only remedy was in equity for
an accounting against the Hotel Company as to its indebt-

edness to the cross complainant; that Hall be required to deliver up the nine hundred and ninety-seven shares of the capital stock of Ponce de Leon Fountain of Youth Company that it may be subjected to the lien created by the trust deed, and that the land claimed by Hall and Ponce de Leon Fountain of Youth Company be subjected to that lien.

The result of this litigation was a final decree in favor of the original complainant deciding the equities in its favor, ascertaining the amount of indebtedness due to it under the trust deed due by the Hotel Company, and decreeing the payment thereof by a certain time in default of which the properties, including the 997 shares of stock in the Ponce de Leon Company, should be sold at public outcry to the highest bidder. The decree also provided for the payment of costs and attorney's fees. The decree was dated November 28, 1923.

The properties were sold, according to the Master's report of the sale, to W. J. Hoggson for the sum of $159,700. The Master's report was confirmed.

It recited, among other things, that W. J. Hoggson had filed with the Master an acknowledgment of the payment of the indebtedness of $9,013.33 adjudged to be due to Fred L. Hall on account of participation certificate numbered 11. That satisfaction had also been made of the claims held by Clark T. Chambers and W. Tyler Browne on account of certificates held by them.

The decree of confirmation was made December 15, 1923.

On January 29, 1924, the appellants, George F. Willey, George Oberdorfer, A. Rowden George and Louis H. Mc-Kee, individually and as Trustees under Trust Agreement of Ponce de Leon Beach Associates, exhibited their bill against W. H. Hoggson Corporation, Fred L. Hall, Goold T. Butler, Fountain of Youth Hotel Company, W. J. Hogg-

son, Clark T. Chambers, W. Tyler Browne, E. L. Barnett, Inc., and St. Augustine Beach & Toll Bridge Company.

A demurrer of certain defendants to the bill was sustained, and an amended bill of complaint was filed May 24, 1924.

The amended bill alleges that in April, 1923, a trust agreement was entered into between Bassett, Jr., Tilden, Arnold, Connell and Bush, as trustees, and Hall, George F. Willey, A. Rowden George, George Oberdorfer and Catherine Oberdorfer, as subscribers, creating what is known as a common law trust under the name of the Fountain of Youth Company of St. Augustine. By this agreement, Bassett, Tilden, Arnold, Connell and Bush were constituted trustees for the use and benefit of the shareholders in the trust property. The trustees had the power to acquire, hold and dispose of property of any kind and to invest and reinvest the proceeds thereof. That soon afterward, during the same month Bassett, Tilden, Arnold, Connell and Bush resigned and the complainants and F. L. Hall were appointed successors. That Hall and the complainants, Willey, George, McKee, Oberdorfer and Catherine Oberdorfer, Florence H. Hall and Jane Adams Willey constitute all the beneficiaries or shareholders under the trust.

It is alleged that about April 11, 1923, Hall transferred and assigned to the then trustees 1423 shares of the capital stock of Fountain of Youth Hotel Company to be held by them subject to the trust. The certificate carrying these shares was numbered eleven (11). That the successors to those trustees have been unable to obtain a transfer of the stock upon the books of the Hotel Company.

It seems to be the theory of the bill that the failure to obtain a transfer of such stock upon the books of the Corporation is due to the confusion of authority in the management of the Company, and the adverse interests of Hall and

Hoggson, who control the Corporation. It is the alleged ownership of this stock which constitutes the basis of the relief sought by the bill in which is attacked the final decree rendered in the foreclosure suit of W. J. Hoggson Corporation, referred to above.

The relief prayed is that the final decree in that case be decreed to have been fraudulently and improperly obtained, and that it be vacated and annulled, and that the Master's deed and decree confirming the sale be vacated and cancelled. That complainants be permitted to intervene in the cause and that the Hotel Company be directed to transfer to the complainants upon the books of the corporation the certificate of stock numbered 11; for an injunction against Hoggson and the St. Augustine Beach & Toll Bridge Company restraining them from issuing or disposing of any bonds secured by a mortgage upon the lands acquired under the sale, for a receiver and subpoena. There is no prayer for general relief.

A demurrer to the bill was sustained and the complainants appealed.

Necessary parties to the suit, assuming but not deciding that there is equity in the bill, are Louis H. McKee, and each one of the trustees and subscribers under the Common Law Trust. Because, such so-called trust, in which the trustees are pretended to be vested with the power of acquiring and selling property and reinvesting the proceeds of the sale thereof for the common advantage and profit of trustees and subscribers, is nothing but a veiled and futile effort to avoid the liabilities of a co-partnership and acquire the privileges and immunities of a corporation without complying with the corporation laws of the State. Such an association is nothing more than a co-partnership or joint stock company in which the members are jointly and severally liable. When a suit or an action is brought in behalf

of such an association it must be brought in the names of all the members as co-partners. No statute in this State makes provision for suits to be brought in behalf of joint stock companies in the name of the company or its trustees.

A trust is not established by merely naming a person as "trustee." The word has no such arbitrary power. A trust, said Sir Edward Coke, is a confidence reposed in some other, not issuing out of the land, but as a thing collateral, annexed in privity to the estate of the land, and to the person touching the land, for which *cestui que* trust has no remedy but by subpoena in chancery. It is a thing distinguished from legal property or legal right to property. No person can be both trustee and *cestui que* trust at the same time, for no person can sue a subpoena against himself. Therefore if an equitable estate and a legal estate meet in the same person the trust or confidence is extinguished for the equitable estate merges in the legal estate. See 1 Perry on Trusts and Trustees, Sec. 13.

The phrase "Common Law Trust" describes no peculiar characteristic either in the nature of power or liability which attaches to an organization such as is described in the bill as the "Fountain of Youth Company of St. Augustine," afterwards called the "Ponce de Leon Beach Associates."

The idea of a common law trust probably originated in those States in which the Statute of Frauds not being adopted practically in the words of the statute 29 Charles II held that a trust created by parol could be established at common law. So the phrase has reference to the method of its creation rather than to the powers, duties and liabilities of the trustees and *cestui que trustent*.

The association created by the complainants, and others named in the bill, however, was one created by an agreement in writing in which each one of the parties should have an

interest in the fund in accordance to his contribution and two or three of their number should be the agents of the others in all investments of the funds, speculations and other activities while at the same time acting as principals for themselves. In this State an express trust in lands must be created in writing, although an implied or constructive trust may be deemed by the court to have been created in a given state of circumstances.

The document referred to in the bill as creating a "Common Law Trust," in so far at least as the liabilities of the parties are concerned, created nothing more than a co-partnership. An action in behalf of the members should have been in their names; for the interests being joint all should have been joined in the action.

The bill names several persons as parties interested in the properties of the association, but some of whom only are joined as complainants; while from a document filed in this case by one of the appellants, George F. Willey, one of the parties named as an appellant and alleged to be one of the partners in the so-called "Common Law Trust," did not authorize an appeal in his name.

When parties having a joint interest in the subject matter of litigation are not properly before the court the appeal will be dismissed. See Sherlock v. Couper, 43 Fla. 51, 29 South. Rep. 444; Harison v. Ocala Building & Loan Ass'n, 52 Fla. 522, 42 South. Rep. 696; Jones v. Miller, 77 Fla. 297, 81 South. Rep. 413; Andre v. Jones Inv. Corp., 84 Fla. 488, 94 South. Rep. 158.

The motion to dismiss the appeal is therefore granted.

WEST, C. J., AND WHITFIELD, TERRELL, STRUM AND BROWN, J. J., concur.