214 So.2d 732 (1968)
Frank ALTER, Appellant,
v.
Max FINESMITH, David Easton and Adeline Uydess, As Executors of the Estate of Harry Uydess, Deceased, et al., Appellees.
No. 67-889.
District Court of Appeal of Florida. Third District.
October 15, 1968.
Rehearing Denied November 5, 1968.
*733 Milton E. Grusmark, Irwin Oster, Miami Beach, for appellant.
Broad & Cassel and Lewis Horwitz, Miami Beach, for appellees.
Before CHARLES CARROLL, C.J., and PEARSON and BARKDULL, JJ.
PEARSON, Judge.
The subjects of this appeal are (1) a judgment which found that the plaintiff-appellees were entitled to an accounting because of fraud, and (2) the subsequent judgment on accounting. The action arose from a real estate transaction in which the defendant-appellant was the real estate agent and also one of a group of individuals who were purchasing the property.
The parties differ widely in their statements of the facts revealed by the record. We find it convenient to adopt the statement of facts set out by the trial judge in the judgment. We shall first quote the trial judge's statement and afterwards, in a discussion of the points involved, set forth the view of the facts urged by the appellant.

* * * * * *
"The evidence reveals, and I so find, that defendant [appellant] at all material times was a real estate broker in Dade County, Florida. Plaintiffs [appellees], with the exception of plaintiff MALAMUDE who originally was a defendant, are all residents of New York, and all plaintiffs are engaged in various individual occupations, none of which was or is the business of buying and selling real estate. Plaintiffs were and are well acquainted with each other, most of them being relatives of the plaintiff MAX FINESMITH. Plaintiff MAX FINESMITH and CAHN, who were generally spokesman for plaintiffs, knew defendant well since boyhood.
"In or about March, 1958, plaintiffs MAX FINESMITH and JACK BRAVERMAN were in Miami on a vacation, when during the course of their visiting with defendant, he urged the purchase of the unimproved land described in the complaint by them and himself stating it could be sold soon at a profit. It was intended that all share profits, losses, and control. Defendant informed those plaintiffs that the owner of the land was a DR. LEO GROSSMAN and the purchase price was approximately $277,000.00. Plaintiffs MAX FINESMITH and BRAVERMAN informed defendant they would discuss the proposed venture with others in New York to form a group for the purchase.
"Plaintiffs MAX FINESMITH and BRAVERMAN returned to New York and related to the other plaintiffs, relatives and friends of plaintiff MAX FINESMITH, their conversations with defendant. Defendant's representations concerning who the seller of the land was and the purchase price of approximately $277,000.00 were transmitted to the other plaintiffs in New York. Defendant had phone conversations between Miami and New York with plaintiff MORTON CAHN during which defendant made the same representations to plaintiff CAHN as he *734 had made to plaintiffs MAX FINESMITH and BRAVERMAN. As a result of defendant's representations, plaintiffs agreed to purchase the land for $277,000.00.
"The closing of the sale of the land took place in June, 1958, at the law offices of Lawrence E. Hoffman in Miami Beach. Instead of there being one sale from DR. LEO GROSSMAN, the owner of the property, to plaintiffs and defendant, the joint adventurers, for approximately $210,00.00 there were, in form, two sales; one from DR. LEO GROSSMAN to SAUL LESTER, defendant's father-in-law, for approximately $210,000.00, and the other from LESTER to plaintiffs and defendant for approximately $277,000.00. The closing of the two sales was simultaneous.
"In answer to plaintiffs' interrogatories, defendant stated that the purchase price of the land on the sale from GROSSMAN to his father-in-law was about $210,000.00, and the source of the cash which his father-in-law used to pay LEO GROSSMAN at the closing of the sale of the land from GROSSMAN to his father-in-law was `most of the funds came from the simultaneous closings.'
"Upon plaintiffs' request for admissions, defendant admitted, among other things, the following:
1. The purchase price of the land to the parties in this suit was $276,975.00.
2. There was a simultaneous closing of the sale of the land from LEO GROSSMAN to defendant's father-in-law on the one hand, and from defendant's father-in-law to the parties in this suit on the other hand.
3. Lawrence E. Hoffman at the simultaneous closing of the sales was the attorney for defendant's father-in-law and also for the parties in this suit.
4. Lawrence E. Hoffman was defendant's attorney in other matters unrelated to the matters involved in this suit and unrelated to the land described in the complaint in this suit.
5. There was no consideration paid by defendant to his father-in-law for the assignment from his father-in-law to defendant of the mortgage for $48,070.55.
6. Defendant negotiated on behalf of his father-in-law the sale of the above described land from LEO GROSSMAN to his father-in-law.
7. Defendant negotiated the sale of the above described land from his father-in-law to the parties in this suit.
"I find as a fact that the source of the cash which defendant's father-in-law used to pay the seller of the property, LEO GROSSMAN, at the closing of the sale from GROSSMAN to defendant's father-in-law came from the plaintiffs, and actually defendant made no investment in the land. I also find that defendant received all of the proceeds principal and interest, of the note and unrecorded mortgage for $48,070.55. I find that defendant never disclosed to plaintiffs that the purchase price of the property from the owner, LEO GROSSMAN, was approximately $210,000.00 rather than approximately $277,000.00 which defendant had represented it to be to plaintiffs.
"I find that defendant did not disclose to plaintiffs that he had been assigned the note and unrecorded mortgage of $48,070.55 without consideration, and that he ultimately received the entire principal and interest on this note and unrecorded mortgage.
"I find that plaintiffs and defendant were joint adventurers in the transaction of purchase and sale of the land described in the complaint, and defendant owed plaintiffs a duty to disclose to them all material facts in all transactions relating to the land, and his failure to disclose to them that the selling price from LEO GROSSMAN was $210,000.00 was a breach of defendant's fiduciary duty to plaintiffs, and defendant's failure to disclose *735 to plaintiffs that he received, without consideration, the note and unrecorded mortgage of $48,070.55, and ultimately received the proceeds, including principal and interest, was likewise a breach of his fiduciary duty to plaintiffs.
"I find that plaintiffs did not know those salient facts concerning the transaction and had they known the truth, they would not have engaged in the transaction except upon a basis of a selling price to the joint adventurers of approximately $210,000.00, approximately $67,000.00 less than the purchase price which plaintiffs actually paid.
"The parties ultimately sold the land to Urban & Suburban Homes, Inc. for $450,000.00. Defendant secretly received $35,000.00 as part of $45,000.00 broker's fees on such sale, but subsequently delivered to plaintiffs $10,000.00, keeping for himself $25,000.00. Defendant had not disclosed to plaintiffs that he was receiving part of the broker's fees on this sale, but, on the contrary, represented that other brokers were receiving all the fees. In fact, the other brokers received approximately $10,000.00 instead of the $45,000.00 represented by defendant to the plaintiffs that the other brokers were receiving."

* * * * * *
"The Board of Public Instruction of Brevard County ultimately purchased a portion of the land described in the complaint from Urban & Suburban Homes, Inc. for approximately $143,000.00."

* * * * * *
"I find that defendant did not disclose to plaintiffs that the Board of Public Instruction of Brevard County was contemplating purchasing a portion of the land prior to the parties selling the land to Urban & Suburgan [sic] Homes, Inc., and defendant did not disclose to plaintiffs that subsequent to the purchase by the Board of Public Instruction from Urban & Suburban Homes, Inc., he had claimed a broker's fee as a result of that sale. I find that defendant had a fiduciary duty to disclose such facts to plaintiffs, which they did not know, and his failure to do so was a breach of said fiduciary duty. If, in fact, he received a broker's fee as a result of the sale of a portion of the land from Urban & Suburban Homes, Inc. to the Board of Public Instruction of Brevard County, he is accountable to plaintiffs for such sums he may have received.
"I conclude from all the facts that there was a fiduciary relationship between plaintiffs and defendant; that defendant breached his fiduciary duty to plaintiffs; and that defendant is required to account to plaintiffs for the difference between the price at which the land described in the complaint was sold by the owner, LEO GROSSMAN, approximately $210,000.00, and the amount paid by the plaintiffs, approximately $277,000.00; that defendant is required to account to plaintiffs for all principal and interest obtained by him on the note and unrecorded mortgage for $48,070.55, except any portion which may be included in the accounting of the true selling price of the land; that defendant is required to account to plaintiffs for all brokerage fees obtained by him as a result of any sales of the land described in the complaint, including, but not limited to, the sum of $25,000.00 obtained as a brokerage fee on the sale from the parties in suit to Urban & Suburban Homes, Inc.; and any brokerage fees he may have obtained as a result of the sale by Urban & Suburban Homes, Inc. to the Board of Public Instruction of Brevard County.
"I find that defendant misrepresented material facts to his joint adventurers and contributed nothing to the enterprise, and I find that his misrepresentations resulted in his fraudulently acquiring an interest in the joint adventure, using plaintiffs' capital as his own. I therefore conclude that he was not entitled to any interest therein, and the interest of each party should be reallocated upon an accounting to the actual contribution of each party."
*736 The appellant, Alter, relies upon four points[1] for reversal:
"POINT 1.
THE PARTIES WERE NOT CO-ADVENTURERS IN A JOINT VENTURE AND CONSEQUENTLY NO FIDUCIARY RELATIONSHIP EXISTED.
"POINT II.
THE COURT ERRONEOUSLY GAVE RELIEF TO PARTICIPANTS WHO PRESENTED NO EVIDENCE IN SUPPORT OF THEIR CLAIM.
"POINT III
THE SUIT SHOULD HAVE BEEN BROUGHT AT LAW AND NOT IN CHANCERY.
"POINT IV.
THE SUIT WAS BARRED BY LACHES."
The facts from which the trial judge found that a fiduciary relationship existed are (1) the appellant was the real estate broker for the parties; (2) the appellees were non-residents of this state and were not in the business of buying and selling real estate; (3) the appellant was a close personal friend of one appellee, Max Finesmith, who recruited the other appellee-purchasers from among his own relatives and close friends; (4) the appellant originated the idea of the purchase and urged it upon the group; (5) it was intended that all the purchasers should share profits, losses, and control; (6) the appellant misrepresented the amount of the purchase price; and (7) the appellant used his personal attorney as the attorney for the group.
There is conflict in the record upon some of the items listed by the judge as the grounds for his finding that there was a fiduciary relationship. Where there is evidence to support a finding of the trial judge, the appellate court will not set the finding aside unless it is demonstrated that the finding is manifestly unreasonable and clearly against the weight of the evidence. Dowd v. United States Fidelity and Guaranty Co., Fla.App. 1966, 183 So.2d 558.
The appellant urges that the finding that a fiduciary relationship existed among the parties is manifestly unreasonable because the parties entered into a written agreement which did not provide for joint control, joint proprietory interest, or joint liability for losses; and the absence of such provisions shows that the parties were not co-adventurers and therefore could not have a fiduciary relationship.
We think this argument must fail because the trial judge found the fiduciary duty to disclose the material facts of the transactions grew out of the broker-purchaser confidential relationship. See Hershey v. Keyes Company, Fla.App. 1968, 209 So.2d 240. The duty of the appellant to disclose his own position was established before the written agreement was consummated. The appellant knew, before the parties sold the land to Urban & Suburban Homes, Inc., that the Board of Public Instruction of Brevard County contemplated buying a portion of the land. He did not disclose this fact to the appellees. After Urban bought the land, it sold a portion to the Board. The appellant made a demand upon Urban for a real estate commission of 10% of the price it received from the Board. The appellees had no knowledge that the appellant was trying to sell for Urban a portion of the land that the parties had sold to Urban. The appellant's failure to disclose these facts of importance to all the members of the land trust after the agreement was consummated was a continuation of the fraud he had *737 perpetrated upon the appellees prior to the consummation.
The case of Donahue v. Davis, Fla. 1953, 68 So.2d 163, is ample authority for us to hold that a joint adventure may exist among persons purchasing land for resale and that the fact that the title of the land is taken in a corporation (as in that case) or a trustee (as in this case) does not preclude the existence of a fiduciary relationship among the co-adventurers.
The appellant argues next that the court should not have given relief to those appellees who did not present evidence in support of their claim. We are not aware of a rule of law which requires all the plaintiffs in an action to appear before the court as witnesses. It is true that it is proper for the trier of fact to draw inferences from the failure of a party to produce an available witness. See 29 Am.Jur.2d, Evidence, §§ 180-188. But no case cited in these sections contains a rule requiring the trier of fact to enter a finding against a plaintiff who does not appear to testify in support of his claim. Here the evidence offered by the appellees who were present supported the claim of all the appellees, those who were present in court as well as those who were not. Such evidence is all that is necessary to support the judgment.
There is no contention under this point that the absent appellees had actual or constructive notice of the secret profits which the appellant was realizing from the purchase or the subsequent undisclosed real estate commissions upon the sale of the land.
The appellant's third point urges that the cause should have been brought at law and not in chancery. He does not assign as error any ruling by the trial judge which denied a motion to transfer the cause to the law side of the court nor does his motion to dismiss the complaint contain the ground now urged. Courts of chancery have jurisdiction over an action seeking an accounting when the parties have a fiduciary relationship. See cases collected at 1 F.L.P., Accounts and Accounting, § 12. We conclude that error has not been demonstrated under this point.
The fourth point urges as error the trial judge's failure to find that the cause was barred by laches. The appellant argues that he was faced with an action begun by a complaint filed in December 1964 predicated upon acts purported to have occurred in June 1958. In addition, he points out that Saul Lester (his father-in-law), who could have testified as to the transaction, died eighteen months before the complaint was filed.
The appellant's answer did not raise the defense of laches; therefore, we do not have a specific finding of the trial judge on the point. Since there is evidence in the record that the discrepancy in the purchase price was not discovered until shortly before this action was instituted, a finding that the cause was not barred by laches would be justified. We must therefore assume that the trial judge found the defense of laches to be without merit. Cf. Miami Bank & Trust Co. v. Frank T. Budge Co., 107 Fla. 581, 145 So. 192 (1933).
Having examined the record in the light of each point presented and finding no reversible error, we affirm the judgment.
Affirmed.
CHARLES CARROLL, Chief Judge (dissenting).
I respectfully dissent. As I view the record it discloses that when appellees purchased the property they had notice of the fact that the property had been acquired previously by the appellant's father-in-law for less than the amount they had been told it would cost, and that it was being resold to them at an increased price, and that the resultant profit inured to the benefit of appellant through the mortgage assignment to him, representing the difference *738 in price. There was no effort on the part of the appellant to conceal that situation. The two sale transactions were consummated at the same time at a closing at which one of the ultimate purchasers, who knew of the relationship between appellant and their immediate grantor, was present in his own interest and as a representative of the others. Also, they were represented at the closing by an attorney, who acted for all parties, and whose full knowledge therefore was imputable to the ultimate purchasers as his clients. In addition, since the intervening profit was reflected on the closing statement which was used and observed at the closing, that alone was sufficient to give notice to the appellees through their attorney and their representative who was there, or at least the disclosures on the closing statement were enough to put them on inquiry. For those reasons I would reverse.
NOTES
[1] All assignments of error not argued under one of these points must be deemed abandoned. See Parker v. Dekle, 46 Fla. 452, 35 So. 4 (1903); Hoodless v. Jernigan, 46 Fla. 213, 35 So. 656 (1903). Of course this rule does not apply to fundamental error.