In the Matter of Ralph Alvin
BUCHMAN, Bankrupt.

SECOND NATIONAL BANK OF
TAMPA, Appellant,

v.

J. Bruce BLAKE, Trustee, Appellee.

No. 78–1614.

United States Court of Appeals,
Eighth Circuit.

Submitted June 7, 1979.

Decided June 12, 1979.

John C. Quaintance, Sioux Falls, S. D., and Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, Fla., for appellant.

Appellee did not file a brief or an appearance form.

Before HEANEY, STEPHENSON and McMILLIAN, Circuit Judges.

PER CURIAM.

The Second National Bank of Tampa (hereinafter the Bank), a lien creditor of the bankrupt, appeals from the district court's affirmance of an order of the bankruptcy referee, confirming the sale of the trustee's equity in certain property of the bankrupt estate. More than four months

before the date of bankruptcy, the Bank had brought a creditor's suit in state court to impose and enforce a lien on this property. In affirming the referee's order, the district court [1] held that the Bank's lien had been obtained through legal proceedings within four months before bankruptcy, that the lien was voidable under section 67a(1) of the Bankruptcy Act, 11 U.S.C. § 107(a)(1),[2] and that the bankruptcy court therefore had jurisdiction of the property and could sell it. This court has jurisdiction under section 24a of the Act, 11 U.S.C. § 47(a), and under 28 U.S.C. §§ 1291, 1334. For reasons hereinafter given, we affirm.

## I.

▮▮▮ In March, 1973, the Bank recovered two judgments in the Circuit Court for Hillsborough County, Florida, against Ralph Buchman, the bankrupt herein, who was then a resident of Florida. At the same time, writs of execution were issued thereon, and were returned nulla bona on February 25, 1975. On March 27, 1975 (more than four months before Buchman's bankruptcy), the Bank filed a creditor's suit and lis pendens in the Circuit Court for Pasco County, Florida, to enforce an equitable lien on Buchman's interest in certain real and personal property, located in Pasco County and held by Rex A. King as trustee under a joint venture agreement.[3] On April 7, 1975 (less than four months before bankruptcy), Buchman, who had moved to South Dakota, was personally served with process.

On August 1, 1975, Buchman filed a petition in bankruptcy in the District of South Dakota. The referee authorized the sale of all the bankrupt's assets, real or personal, and on January 11, 1977, after a report by the trustee, the referee confirmed the sale of the "trustee's equity, if any," in the real estate in Pasco County.[4] On February 14, 1977, counsel for the Bank filed an affidavit, informing the bankruptcy court of the creditor's suit in Florida and stating that the complaint in that suit had been filed "more than four months prior to" the date of bankruptcy. Claiming that the bankruptcy court lacked jurisdiction of the property, the Bank moved that the referee vacate his order of January 11, deny approval of the sale of the real estate interest, and also deny approval of the proposed sale of Buchman's interest in the partnership called "Rex A. King As Trustee." On the same

1. The Honorable Fred J. Nichol, Chief Judge, United States District Court for the District of South Dakota.

2. Bankruptcy Act § 67a(1) provides:
   Every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition initiating a proceeding under this title by or against such person shall be deemed null and void (a) if at the time when such lien was obtained such person was insolvent or (b) if such lien was sought and permitted in fraud of the provisions of this title . . . .
   11 U.S.C. § 107(a)(1) (1976).

3. By a written agreement of August, 1967, Buchman, King and a third person had formed this joint venture to develop a specified parcel of real estate, each of the three "Owners" contributing an equal amount toward the purchase price of the land. Solely for convenience in the purchase, improvement and resale of the land, King took title in his name, alone, as trustee for the three "Owners." Under Florida law, such "an agreement among two or more to purchase specific property for speculation or resale at a profit is a joint adventure" and "is governed by partnership law." *Drew v. Hobbs*, 104 Fla. 427, 430, 432, 140 So. 211, 212 (1932), *cited in Donahue v. Davis*, 68 So.2d 163, 171 (Fla.1953); *accord, Proctor v. Hearne*, 100 Fla. 1180, 1186–87, 131 So. 173, 176 (1930). Moreover, the decision of the parties to carry on their venture in the form of a trust does not change the nature of the relationship among themselves. *Alter v. Finesmith*, 214 So.2d 732, 737 (Fla.Dist. Ct.App.1968), *cert. denied*, 225 So.2d 538 (Fla. 1969), or their liability to third parties, *Drew v. Hobbs, supra*, 104 Fla. at 432–33, 140 So. at 212–13; *Proctor v. Hearne, supra*, 100 Fla. at 1188–89, 131 So. at 177; *Willey v. W. J. Hoggson Corp.*, 90 Fla. 343, 354–55, 106 So. 408, 412 (1925). Thus, despite the formal appearance that Buchman was a beneficiary of a trust, the corpus of which was the land and proceeds from its sale, Buchman's interest was really that of a partner and the land and proceeds were partnership property.

4. The bankrupt himself, through his attorney, was the purchaser at this sale; the purchase price was $450; the Bank's earlier bid of $400 was rejected.

day (February 14), the referee orally denied the Bank's motions and confirmed the sale of the "trustee's equity, if any," in Buchman's partnership interest.[5] One week later, a written denial of the Bank's motions was entered and the Bank appealed to the district court arguing that the bankruptcy court did not have jurisdiction of the property.

In the interval since the filing of the bankruptcy petition, the Bank had been proceeding with its creditor's suit in the Florida state court. On July 2, 1976, the state court granted the Bank's motion for summary judgment and subsequently scheduled a sale of Buchman's partnership interest for March 11, 1977. On March 4, 1977, the trustee in bankruptcy learned of this intended sale and obtained ex parte from the bankruptcy referee a stay of the sale. From the issuance of this stay, the Bank appealed to the district court, again challenging the bankruptcy court's jurisdiction over the property.

In addition, the Bank moved that the referee reconsider the issuance of his stay order. Full argument was had on May 24, 1977, and on May 27 the referee denied the Bank's motion. The Bank then took its third appeal to the district court, raising the same issue of jurisdiction.

On consolidation of the three appeals, the district court held as follows:

(1) that "[u]pon the filing of the petition in bankruptcy, all property of Buchman, including the equitable property in the joint venture with Rex King, vested in the bankruptcy court;"[6]

(2) that under Florida law, the lien created by the commencement of a creditor's suit arises upon service of process, not upon mere filing of the suit;

(3) that the Bank's lien was therefore obtained within four months of bankruptcy, and did not "remove the assets from the bankruptcy court jurisdiction;"[7] and

(4) that the state court action to declare and enforce this lien was subject to the stay of Bankruptcy Rule 601.[8]

---

5. The equity in the partnership interest and in some other property was sold to Buchman's wife for $1,600.

6. This statement appeared in the part of the opinion dealing with the validity of the stay order, but the proposition was also logically necessary to the court's reasoning as to the validity of the sales. Insofar as the court was referring to *title* to bankrupt's property, the sentence is fundamentally correct. The court, however, accepted the statement as a premise of its finding that the bankruptcy court had *jurisdiction* of the property. In doing so, the court confused *title* to the bankrupt's property with *possession* of the property (which is the basis for summary jurisdiction over any specific property). *See, e.g., Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 481, 60 S.Ct. 628, 630, 84 L.Ed. 876 (1940) ("Bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession. And the test of this jurisdiction is not title in but possession by the bankrupt at the time of the filing of the petition in bankruptcy.").

7. The court's reasoning on this point was unclear, but apparently reliance was placed on § 67a(1) of the Act. *See* note 2 *supra.* The United States Supreme Court has held, however, that a lien subject to this section is not "void," but merely voidable. *Fischer v. Pauline Oil & Gas Co.,* 309 U.S. 294, 300–03, 60 S.Ct.

535, 84 L.Ed. 764 (1940). A trustee seeking to invoke the section must, for the benefit of the lienholder, obtain a judicial determination of the applicability of the section. *Id.* at 302, 60 S.Ct. 535. Moreover, in the absence of "fraud," the trustee bears the burden of proving that the debtor was insolvent when the lien was obtained. *Liberty Nat'l Bank v. Bear,* 265 U.S. 365, 369–70, 44 S.Ct. 499, 68 L.Ed. 1057 (1924); *First State Bank v. Fox,* 10 F.2d 116, 118–19 (8th Cir. 1925); *Stone-Ordean-Wells Co. v. Mark,* 227 F. 975, 976–77 (8th Cir. 1915). *See generally* 4 Collier on Bankruptcy ¶ ¶ 67.05, 67.15[1] (14th ed. 1967) [hereinafter cited as Collier].

In this case, the trustee made no attempt to avoid the Bank's lien; the question of voidability arose only indirectly in the course of the Bank's challenge of the bankruptcy court's jurisdiction. Furthermore, there is no evidence that the trustee ever alleged—let alone proved—that Buchman was insolvent when the lien arose. These facts make it quite tenuous to base a finding of the bankruptcy court's jurisdiction upon the invalidity of the Bank's lien under § 67a(1).

8. Bankruptcy Rule 601 provides, in relevant part, as follows:
    Rule 601. Petition as Automatic Stay Against Lien Enforcement
    (a) Stay Against Lien Enforcement
    The filing of a petition shall operate as a stay of any act or the commencement or

Accordingly, the district court affirmed the referee's order confirming the sales of Buchman's interests in the real estate and joint venture. The referee's order staying the sale by the Florida court was upheld as a "reaffirmation" and "enforcement" of the automatic stay of Rule 601.[9] The Bank appeals only from the affirmance of the sale of Buchman's partnership interest.[10]

## II.

On appeal the Bank argues that the bankruptcy court lacked jurisdiction of the partnership interest for either of two reasons: (1) that the interest was subject to a lien enforcement proceeding begun in state court more than four months prior to bankruptcy; or (2) that the Bank had obtained a valid lien on the interest upon the *filing* of its creditor's suit (more than four months before bankruptcy), rather than upon service of process, and that by virtue of the commencement before bankruptcy of the suit to enforce this lien, the state court acquired exclusive jurisdiction of the partnership interest.[11] Implicit in appellant's argument were the assumptions that the bankruptcy court had to have jurisdiction of the partnership interest in order to sell it, and that the court's asserted lack of jurisdiction rendered the sale void.

█ It is, of course, fundamental that a court must have subject matter jurisdiction in order to take any action in the proceeding before it. Confusion in the present case

has arisen, however, through appellant's failure to distinguish between the prerequisites of bankruptcy court jurisdiction in two different kinds of situations.

█ Generally, where there is a dispute between the trustee in bankruptcy and an adverse claimant about the ownership of property, or about the validity or amount of a lien thereon, the bankruptcy court has jurisdiction to resolve the dispute only if it has actual or constructive possession of the property, or consent to its jurisdiction by the adverse claimant. *Magnolia Petroleum Co. v. Thompson,* 106 F.2d 217, 222 (8th Cir. 1939), *rev'd on other grounds,* 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940); *Page v. Arkansas Natural Gas Corp.,* 53 F.2d 27, 33–34 (8th Cir. 1931), *aff'd,* 286 U.S. 269, 52 S.Ct. 507, 76 L.Ed. 1096 (1932); 2 Collier ¶ 23.04[2] (1974). It is this kind of jurisdiction that the Bank insists was a precondition of the sale in issue. The problem with this argument is that there was no dispute or controversy of the sort just mentioned, the determination of which would require the bankruptcy court to have possession of the property.[12] All that occurred was the referee's confirmation of a sale of the bankrupt's property over the Bank's objection that the bankruptcy court lacked authority to sell. Because the disagreement directly concerned only the extent of the court's authority, and not the rights of the parties in any specific piece of property, the court's jurisdiction did not depend on possession of any given property.

continuation of any court proceeding to enforce (1) a lien against property in the custody of the bankruptcy court, or (2) a lien against the property of the bankrupt obtained within 4 months before bankruptcy by attachment, judgment, levy, or other legal or equitable process or proceedings.
11 U.S.C. App. Rule 601 (1976).

**9.** The district court also affirmed the stay order on the ground that, since the property was within the jurisdiction of the bankruptcy court, the stay "was merely in aid of its exclusive jurisdiction over the property."

**10.** The "Statement of Issues" in appellant's brief does not specify which of the orders are being appealed. Throughout the brief, however, appellant repeatedly refers to the sale of the partnership interest and does not even mention the stay order or the order confirming

the sale of the real estate interest. Accordingly, it may be presumed that the Bank does not contest the district court's rulings on the latter two orders.

**11.** Appellant's "Statement of Issues" does not indicate in what way the first two "issues" differ from each other (Appellant's Brief at 2), nor is this clarified by the rest of the brief. The text above is the only reformulation that gives independent content to appellant's first and second issues.

**12.** *See* note 7 *supra.* Even if the trustee had sought to avoid the Bank's lien, § 67a(4) of the Act would have given the court jurisdiction "to hear and determine the rights of [the] parties" under § 67a(1), regardless of whether the court had possession. 11 U.S.C. § 107(a)(4) (1976).

The kind of subject matter jurisdiction that is relevant here is the power of a bankruptcy court to sell the property of the bankrupt estate. Section 2a(7) of the Act grants the court jurisdiction to "[c]ause the estates of bankrupts to be collected, reduced to money, and distributed . . ." 11 U.S.C. § 11(a)(7) (1976). Under section 70a(5), the trustee is vested, as of the filing date, with the bankrupt's title to any property "which prior to the filing of the petition [the bankrupt] could by any means have transferred or which might have been levied upon and sold under judicial process against him . . . ." 11 U.S.C. § 110(a)(5) (1976). Florida law provides that a partnership interest is both "transferable" and "leviable;"[13] therefore, Buchman's partnership interest became part of the bankrupt estate, and the trustee acquired Buchman's title to it. The bankruptcy court clearly had general subject matter jurisdiction to sell the partnership interest. Provided that the court complied with any specific requirements relating to the kind of sale made, the sale was valid.

A bankruptcy sale may be either subject to all valid liens and incumbrances, or free and clear of all liens and incumbrances. Property may be sold subject to all valid[14] liens if the trustee has title to the property, regardless of whether the court has possession of it. *Piedmont Coal Co. v. Hustead (In re Thompson),* 294 F. 247, 250–51 (3d Cir. 1923), *cert. denied,*

264 U.S. 582, 44 S.Ct. 331, 68 L.Ed. 860 (1924), *quoted in* 5 H. Remington, A Treatise on the Bankruptcy Law of the United States § 2060 (5th ed. 1953); *In re Little & Ives Co.,* 262 F.Supp. 719, 722 (S.D.N.Y. 1966) (dictum), *cited in* 6 H. Remington, *supra* § 2533 (Supp.1978); *In re Gutterson,* 136 F. 698 (D.Mass.1905); *Bradley v. Williams,* 304 Ky. 724, 730–32, 202 S.W.2d 149, 152–53 (1947); *General Motors Acceptance Corp. v. Boddeker,* 274 S.W. 1016, 1018 (Tex.Civ.App.1925). According to *Collier*:

> Whatever property is transferred to the trustee by operation of law, the bankruptcy court generally may order sold. The right to sell is a natural corollary of the transfer of title. . . .

4B Collier ¶ 70.97[5], at 1147–48 (1967) (footnote omitted). If, however, the court wishes to sell property free and clear of all liens and incumbrances (with the liens being transferred to the proceeds of the sale), then the court must have actual or constructive possession of the property. *See, e. g., Bradley v. St. Louis Terminal Warehouse Co.,* 189 F.2d 818 (8th Cir. 1951); *In re Cabezal Supermarket, Inc.,* 406 F.Supp. 345, 350 (D.N.D.1976); 4B Collier ¶ 70.99[1], at 1214–15 (1975).

In the present case, the referee's order confirmed the sale of the "trustee's equity, if any," in the partnership interest. From the meaning of "equity"[15]

---

13. Fla.Stat.Ann. § 620.69 (1977) provides in part:

> (1) A conveyance by a partner of his interest in the partnership . . . entitles the assignee to receive the profits to which the assigning partner would otherwise be entitled in accordance with his contract.

*Id.* § 620.695 provides in part:

> (1) On application to a court having jurisdiction by any judgment creditor of a partner, the court may charge the interest of the debtor partner with payment of the unsatisfied amount of the judgment with interest, and may then or later appoint a receiver of his share of the profits and of any other money due or to become due to him from the partnership, and make all other orders to take the actions that the debtor partner might have made or that the circumstances of the case may require.

14. As discussed above, *see* note 7 *supra,* the trustee did not seek to avoid the Bank's lien, nor is there any indication in the record that Buchman was insolvent when the lien was obtained—an essential element of voidability of the lien. Therefore, for the purpose of the rule stated in the text, the Bank's lien was valid. *See* 4B Collier ¶ 70.70[1] (1967).

15. *Black's Law Dictionary* gives the following definition of "equity":

> The remaining interest belonging to one who has pledged or mortgaged his property, or the surplus of value which may remain after the property has been disposed of for the satisfaction of liens. The amount or value of a property above the total liens or charges.

**166**

and from the use of the phrase "if any," [16] it is obvious that this sale was subject to all valid liens. As discussed above, the trustee had title to the partnership interest. Since the bankruptcy court had subject matter jurisdiction to sell Buchman's partnership interest and since the prerequisite of a sale subject to liens (title in the trustee) was met, the sale of the partnership interest was valid.[17]

For the reasons discussed above, the judgment of the district court is affirmed.

**16.** By inserting this phrase in the description of the item sold, the referee allowed for the possibility that the trustee had little or no equity. Although this possibility would be considered in deciding whether to make a sale free of liens, the phrase would definitely not be included in the description of the item sold at such a sale. See 4B Collier ¶ 70.97[2], at 1139 (1967); id. ¶ 70.98[11]; id. ¶ 70.99[1] (1975).

**17.** Even if the Bank's lien had been obtained more than four months before bankruptcy and the state court had acquired "exclusive" jurisdiction of the partnership interest, the sale by the bankruptcy court would still have been proper.

The superior jurisdiction in rem is exclusive only so far as necessary for the appropriate control and disposition of the property and to avoid unseemly conflict, and does not deprive the excluded court of power to make orders, even relating to the property, which do not violate the exclusive right of control by the other court.

1A Moore's Federal Practice ¶ 0.214, at 2506 (citing Penn Gen. Cas. Co. v. Pennsylvania ex rel. Schnader, 294 U.S. 189, 198, 55 S.Ct. 126, 79 L.Ed. 651 (1935); Federal Nat'l Mortgage Ass'n v. Tieso & Kostka Corp., 137 F.Supp. 186, 188–89 (D.Minn.1955)). Thus, the ques-

tion would be whether the bankruptcy court's sale interfered in any way with the Florida court's presumed exclusive right of control.

In such a situation, where a valid lien is being foreclosed in a state court proceeding begun before bankruptcy, the trustee in bankruptcy may intervene in the state proceeding in order to claim the surplus and thereby protect the interest of the bankrupt estate. E.g., Straton v. New, 283 U.S. 318, 327, 51 S.Ct. 465, 75 L.Ed. 1060 (1931); McGonigle v. Foutch, 51 F.2d 455, 461 (8th Cir. 1931); In re Baumchen, 97 F.Supp. 1005, 1006, 1007–08 (D.N.D.1951). In effect, the sale of the trustee's equity in the partnership interest simply transferred, from the trustee to the purchaser (Buchman's wife), the right to intervene in the Florida suit and claim the surplus. The mere change in identity of the person entitled to intervene would not have interfered in any way with the Florida court's exclusive control. Therefore, the bankruptcy court's sale would still have been valid.

The most difficult question posed by this case is why the Bank appealed. Since the sale was subject to all valid liens, and since the trustee did not attempt to avoid the Bank's lien, appellant had absolutely nothing to gain from this appeal.