605 So.2d 1297 (1992)
MAXFLY AVIATION, INC., and Insured Aircraft Title Service, Inc., Appellants/Cross Appellees,
v.
Victor GILL, Appellee/Cross Appellant.
No. 91-2283.
District Court of Appeal of Florida, Fourth District.
October 7, 1992.
*1298 Charles A. Murray, Naples, for appellants/cross appellees.
Linwood Anderson of Hunter & Schultz, Miami, for appellee/cross appellant.
POLEN, Judge.
Maxfly Aviation, Inc., timely appeals from a final judgment in favor of appellee Victor Gill, plaintiff below, in an action to recover damages for the alleged breach of contract for the sale and purchase of an airplane. Victor Gill cross-appeals from the trial court's damage award of prejudgment interest. We affirm on all points on the appeal; the cross-appeal is affirmed in part, reversed in part and remanded.
Victor Gill, a resident of Venezuela, purchased a Beechcraft Super King Air B-200 in February, 1989. A former owner had a partition installed in the cabin which involved drilling holes into the wing spar cap, apparently to fasten the partition to the floor. Prior to Gill's purchase of the aircraft, the partition was removed, leaving small drill holes in the spar cap. In February, 1989, Mr. Gill had the plane flown to Wichita to be examined by Beech Aircraft, the manufacturer. A Beech structural engineer inspected the aircraft and Beech made a minor repair consisting of filling two drill holes with rivets and allowed the others to remain as they were. The repair was noted in the plane's log. Beech advised Mr. Gill that the aircraft's airworthiness was not affected. The log book indicated *1299 that only one inspection would be required, at 900 hours.
A few months later, while the aircraft was at the Fort Lauderdale Executive Airport, Mr. Gill received an offer dated October 27, 1989, from Maxfly Aviation, Inc., to purchase the aircraft for $1,100,000, subject to a prepurchase inspection. The purchase offer provided that Maxfly would deposit $20,000 with Insured Aircraft Title Service, subject to the prepurchase inspection, to be completed on or before October 31, 1989. Mr. Gill agreed. Banyan Air Service inspected the aircraft and its log from October 30 to November 1, 1989. Gill, by his own admission, assured Maxfly that these holes did not pose a significant problem. Banyan inspected the log entry concerning the drill holes.
Maxfly's manager, Van Arsdale, was familiar with the drill holes, having examined the log entry a week or more prior to November 1, 1989. He discussed the holes with Mr. Gill's pilot, Mr. Llavaderas, who had taken the plane to Wichita in February, 1989.
On November 1, 1989, Maxfly insisted that they and Gill execute a purchase contract and the parties did so. The parties utilized Maxfly's sales contract form, which provided for purchase "as is" and "where is." The agreement also provided that Maxfly "has inspected the aircraft and is thoroughly acquainted with its condition and agrees to take title to the aircraft in its `as-is where-is' present physical condition." The contract also called for a $20,000 deposit. Maxfly told Mr. Gill that the $20,000 would remain in escrow with Insured Aircraft Title Service as the deposit for the aircraft. The agreement further provided for a closing date in ten (10) days.
On November 2, 1989, Maxfly withdrew the $20,000 deposit without notice to Gill, by notifying Insured Aviation Title Service that they had rejected the pre-buy inspection on the aircraft and had elected not to buy it. That same day, Maxfly's manager, Van Arsdale, sent a facsimile (allegedly dated November 3rd by mistake) to Mr. Gill, reneging on their agreement to purchase, on the ground that other dealers were downgrading the aircraft due to the reconstructed log book and drilled-through wing spar. The facsimile further stated that Mr. Gill should retain ownership of the aircraft and cancel the agreement with Maxfly. On November 3, another facsimile was sent which stated: "It is very important that you do not take steps to deregister YV-1001P".
On November 15, 1989, Gill filed suit against Maxfly in which he claimed damages of $35,000 which represented the difference between what he would have netted from the sale to Maxfly and what he netted in the aircraft's sale to another party in December, 1989;[1] he also claimed interest on the amount he would have netted from Maxfly during the period of delay between Maxfly's November 2nd rejection of the aircraft and the time he sold the aircraft the following month, as well as attorney's fees. On August 2, 1990, the airplane's manufacturer, Beechcraft, sent Maxfly a letter indicating that the holes in the wing spar necessitated inspections every 900 hours, as opposed to one inspection after 900 hours.
Maxfly filed an answer on December 22, 1989, and an amended answer on February 25, 1991. In the amended answer, Maxfly alleged, inter alia, that the contract was induced by fraud.
On June 25, 1991, there was a one-day bench trial at which Gill failed to appear. Gill's counsel stated that he was called away to Venezuela on family business because a relative had become ill. The trial court suggested that Gill's attorney take an involuntary dismissal without prejudice, but counsel elected to proceed without Gill. The trial court admitted Gill's deposition into evidence in lieu of live testimony over Maxfly's objection. On July 30, 1991, the trial court entered final judgment in Gill's *1300 favor, for $23,800 plus $360 prejudgment interest.
Maxfly first argues that the trial court erred when it admitted Gill's deposition into evidence in lieu of his live testimony. Maxfly contends that although Gill was more than 100 miles away, see Fla. R.Civ.P. 1.330(a)(3)(B), Gill procured his own absence, which the rule disallows. The record, however, is devoid of evidence to the effect that Gill procured his own absence. Moreover, while a trier of fact may draw inferences from the failure of a party to produce an available witness, the trier of fact is not required to find against a plaintiff who does not appear to testify in support of his claim. See Wills v. Snapper Creek Nursing Home, Inc., 465 So.2d 562 (Fla. 3d DCA 1985); Alter v. Finesmith, 214 So.2d 732 (Fla. 3d DCA 1968), cert. denied, 225 So.2d 538 (Fla. 1969); compare Geiger v. Mather of Lakeland, Inc., 217 So.2d 897 (Fla. 4th DCA 1968), cert. denied, 225 So.2d 528 ("It is a general rule that the failure of a party to appear or testify as to material facts within his knowledge creates an inference that he refrained from appearing or testifying because the truth, if made to appear, would not aid his contention... . The unfavorable inference which may be drawn from the failure of a party to testify is not warranted when there has been a sufficient explanation for such absence or failure to testify." Id. at 898.) We find no abuse of discretion and affirm.
We find that Maxfly's second point on appeal is without merit. There is competent, substantial evidence in the record to support the trial court's finding that the evidence presented proved the elements of Gill's claim.
Maxfly next argues that it is irrelevant whether Gill knew that his representation regarding the frequency of the necessary aircraft inspections was false, because the fact that Gill made a misrepresentation which induced Maxfly to sign the contract is sufficient to rescind and cancel the contract. However, the trial court properly resolved this issue in favor of Gill. Maxfly recovered its $20,000 deposit on the purchase price held in escrow by Aircraft Title Services. Maxfly also agreed to assume the cost of the inspection, which it did. Therefore, we affirm all points on appeal.
In his cross-appeal, Mr. Gill first argues that the trial court erred when it awarded him $360.00 in interest, calculated on the 46 days between the contract's closing date and the date that Gill sold the plane to the other party. We agree. Mr. Gill is entitled to interest for 46 days on the contract purchase price of $1,090,000, for a total of $4,885.19. See Juvenile Diabetes Research Foundation v. Rievman, 370 So.2d 33 (Fla. 3d DCA 1979) (the purpose of an award of damages in a breach of contract action is to place the injured party in the same financial position as we would have occupied if the contract had been fully performed); accord Zayre Corp. v. Creech, 497 So.2d 706, 707 (Fla. 4th DCA 1986).
Although Maxfly argues that Gill failed to mitigate damages, the record is devoid of any indication that Maxfly pled the affirmative defense of failure to mitigate damages. See Rievman (in an action for breach of employment contract, mitigation of damages issue was a defensive matter in the nature of set-off on damages which must be specifically pled by defendant as affirmative defense and proved at trial by greater weight of the evidence), and City of Miami Beach v. Carner, 579 So.2d 248 (Fla. 3d DCA 1991). We reverse and remand with directions to amend the final judgment to reflect an award for interest of $4,885.19, as opposed to $360.00.
Gill's second point on cross-appeal lacks merit. He argues that the trial court erred when it awarded him $23,800 in damages, where the difference between the two contract sale prices was $35,000. While there was evidence that the difference between the first contract price and the actual sale price was $35,000, there was conflicting evidence presented regarding other expenditures which would affect the price Gill ultimately netted. Specifically, there was a fact question regarding whether Gill's pilot received a $25,000 commission from the sale or whether he received a $10,000 gift. There was also a question of *1301 fact regarding the amount Gill paid for his share of the expense to inspect the airplane in its ultimate sale, because he did not provide receipts. Questions of fact are properly resolved by the trier of fact. We find competent evidence in the record to support the trial court's award. As a result, the damages award is affirmed.
Accordingly, we reverse the trial court's interest award to Gill and remand for correction consistent with this opinion. We affirm the final judgment in all other respects.
HERSEY, J., and SCHWARTZ, ALAN R., Associate Judge, concur.
NOTES
[1] The sale price to Maxfly was $1,090,000. According to Gill's deposition testimony, he would have netted the full price, had the deal gone through. The sale price of the sale in December was $1,100,000, minus $45,000 in expenses (a $25,000 sales commission and $20,000 in maintenance costs), which netted him $1,055,000.